## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYQUANN BROWN, on behalf**<br>**of his minor son, J.B.,** | : | **Civ. No. 1:23-CV-373** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LOWER SWATARA TWP POLICE** | : | |
| **DEP'T, and OFFICER** | : | |
| **RANDALL T. RICHARDS,** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

### I.   Statement of Facts and of the Case

Pending before the court is a motion to dismiss the plaintiff's amended complaint. (Doc. 10). The plaintiff, Tyquann Brown, brought this suit on behalf of his minor son, J.B., against Lower Swatara Township (the "Township")[1] and Officer Randall Richards of the Lower Swatara Township Police Department. The amended complaint asserts claims against Officer Richards under the Fourth Amendment and state law, and further asserts a Monell[2] claim against the Township. These claims stem from an incident at Middletown Area High School in January of 2022, in which

---

[1] While the caption of the amended complaint lists the township police department as a defendant, the body of the amended complaint clearly indicates that the plaintiff has brought this case against the Township itself. (Doc. 8).

[2] Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658 (1978).

Officer Richards, the School Resource Officer ("SRO"), deployed a taser on J.B. after J.B. was involved in a physical altercation with another student.

The amended complaint alleges that on January 26, 2022, J.B. was sitting in the school cafeteria when two students approached him and made derogatory remarks about J.B.'s younger sister. (Doc. 8, ¶¶ 11-12). J.B. stood up and an altercation between the young men ensued. (Id., ¶ 13). No weapons were used in the altercation. (Id., ¶ 14). Officer Richards and other staff at the school responded and separated J.B. and the other students, with Officer Richards attempting to place J.B. in a control hold. (Id., ¶¶ 15-16). J.B. "broke free" from the control hold and briskly began to walk away from Officer Richards. (Id., ¶ 17). The complaint then alleges that without warning or a directive to stop, Officer Richards deployed his taser into J.B.'s back and subsequently put J.B. in handcuffs. (Id., ¶¶ 18-19). J.B. was taken to the hospital to have the taser wires removed from his skin. (Id., ¶ 19).

With respect to the municipal liability constitutional tort claim against the Township[3] the amended complaint contains the following well-pleaded allegations:

---

[3] We note that the caption of the case identifies the institutional defendant as the township police department, but the body of the complaint treats the township as the defendant. A municipal police department is not a proper institutional defendant in a §1983 civil rights lawsuit "since police departments serve only as an administrative arm of a municipality, and it is a municipality through which any liability must flow to the police department." Seabrook v. Cox, No. 1:21-CV-1137, 2021 WL 11132594, at *5 (M.D. Pa. July 14, 2021), report and recommendation adopted, No. 1:21-CV-1137, 2021 WL 4805492 (M.D. Pa. Oct. 14, 2021). Therefore, we will deem the plaintiff's Monell claim to lie solely against the township

20. On February 9, 2021, Defendant Township enacted a policy on the Use of Force.

21. The Use of Force Policy does not provide any guidance to officers on the use of force, or specifically the use of Tasers, against minors in schools.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

36. Policymakers for Defendant Township know that its police officers assigned as School Resource Officers will confront student-on-student conflict.

37. Policymakers for Defendant Township understand that police officers assigned as School Resource Officers will face a difficult set of choices, and that the wrong choice in such situations will frequently lead to constitutional deprivations.

38. Defendant Township equips School Resource Officers, like Officer Richards, with Tasers and authorizes its use in the school environment.

39. Defendant Township has failed to enact policies regarding the use of Tasers on minors in school.

40. Defendant Township's Use of Force Policy makes no distinction between using force against a minor to stabilize a situation in a crowded school and using force against an adult that poses a threat to an officer.

41. Defendant Township's existing policies leave it up to individual officers to decide whether, and when, less deadly force will be deployed on minors in a school.

42. The differences between the duties of regular officers and those assigned to School Resource Officer makes the need for different policies so obvious, and the inadequacy of existing policy so likely to result in the violation of constitutional rights, that Defendant Township's failure to enact policies governing the use of Tasers in the school environment amounts to deliberate indifference to J.B.'s federally protected rights.

3

    43. Defendant Township's lack of policies involving the use of Tasers in the school environment was the moving force behind the harm imposed upon J.B.

(Id.)

Mr. Brown, J.B.'s father, subsequently filed the instant suit against the Township and Officer Richards. (Doc. 1). With the municipal liability claim against the township framed in this fashion, upon the filing of the complaint, the Township filed a renewed motion to dismiss the Monell claim against it. (Doc. 10). The motion is fully briefed and is ripe for resolution. (Docs. 11-13). For the reasons that follow, we will deny the defendant's motion without prejudice to renewal of this claim through a properly documented motion for summary judgment.

## II.  **Discussion**

### A. **Motion to Dismiss - Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.---, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." (Id., at 555.) "Factual allegations must be enough to raise a right to relief above the speculative level." (Id.)

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when dismissing a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (Id., at 679.) According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by the mere conclusory statements, do not suffice." (Id., at 678.) Rather in conducting a view of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Id., at 679.)

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should

identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." (Id., at 1950.) Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended

complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. **The Defendant's Motion to Dismiss will be Denied.**

As we have explained, the plaintiff asserts a Monell claim against the Township. On this score, the plaintiff contends that the Township is liable for the harm J.B. suffered at the hands of Officer Richards because its Use of Force Policy does not directly address the use of force against minors in the school setting. (Doc. 8, ¶ 40). The plaintiff further argues that the lack of a policy or guidance regarding the use of force against minors in the school setting was the moving force upon the harm imposed on J.B. (Id., ¶ 43). For its part, the Township contends that Brown has not pleaded facts to establish Monell liability. After consideration, while we regard this as a close case, we find that the amended complaint states a plausible claim for Monell liability against the Township. Accordingly, we will deny the motion to dismiss.

It is well settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Iqbal, 556 U.S. 662; see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

injury that the government as an entity is responsible under § 1983." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a ... 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." <u>Id.</u> at 404; <u>see also</u> <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting <u>Andrews</u>, 895 F.2d at 1480). On this score,

> [A] policy or custom may exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of the existing practice so likely to result in the violation of constitutional rights, that the policymaker can be said to have been deliberately indifferent to the need.' "

<u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Brown</u>, 520 U.S. at 417-18 (internal citations omitted)). Thus, an avenue which a plaintiff may seek to hold a municipality liable is through the municipality's inaction, rather than an affirmative policy which resulted in the plaintiffs' alleged injuries.

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 107 (3d Cir. 2002) (citing <u>Brown</u>, 520 U.S. at 404). A

municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference ... [of the constitutional] rights of persons....' " Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the " 'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted). Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [the institutional defendant] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992). Moreover:

> Guided by these threshold principles, the Third Circuit Court of Appeals has explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:
>
> > The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Hunter v. Prisbe, 984 F. Supp. 2d 345, 353–54 (M.D. Pa. 2013) quoting Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003) (internal quotation marks and citations omitted).

In the past, we have also noted a potential dilemma for litigants who endeavor to assert Monell liability claims. To survive a motion to dismiss the plaintiff must allege sufficient well-pleaded facts regarding a municipal custom, practice, or policy to state a plausible claim. Yet, in practice proof of a policy often turns on evidence demonstrating that the municipality failed to address an obvious danger. The question of what is obvious in this setting is often fact-specific and requires some development of a factual record. Recognizing the factually rooted nature of many Monell inquiries we have in the past concluded that where a municipal liability claim is sufficiently state, the resolution of that claim should await summary judgment, where a full factual record may be considered. Hunter, 984 F. Supp. 2d at 355.

So it is here.

In the instant case, Brown asserts that the Township's Use of Force Policy is deficient because of the lack of specific guidance pertaining to the use of force against minors in a school setting, and that this deficient policy caused J.B.'s harm. Brown contends that the interactions between SROs with minors in schools is vastly different than everyday encounters between police officers and adult citizens. Thus, Brown argues that the need for a policy or guidance specifically tailored to the use

of force against minors in schools, particularly when SROs are equipped with tasers, was so obvious that the failure to enact one amounted to deliberate indifference and resulted in harm to J.B.

The plaintiff urges us to follow the course of the District Court for the Eastern District of Pennsylvania in Geist v. Ammary, 40 F.Supp.3d 467 (E.D. Pa. 2014). In Geist, an SRO had gotten into an altercation with a student after there was an order for the students to disperse, and the SRO ultimately deployed his taser on the student. Id. at 472. The student's mother filed a § 1983 action and brought a Monell claim against the City of Allentown, alleging that the City's Use of Force Policy was inadequate because it did not provide guidance on the use of tasers on children. Id. at 473. The City filed a motion for summary judgment, and the Court denied the motion finding that there was a genuine dispute of material fact as to whether the Use of Force Policy was adequate or whether it amounted to deliberate indifference. Id. at 498. The policy at issue in Geist specifically addressed the use of tasers, but there was a question of whether the policy provided guidance on when the use of a taser on a minor was appropriate. Id. at 494-95. There were also questions regarding whether the department had training on the use of tasers, and whether such training was incorporated into the Use of Force Policy. Id. Further, the Court noted that there had been numerous incidents involving tasers that caused serious injury to individuals. Id. at 497. Ultimately, the Court concluded that "[g]iven that seven

officers were placed in City schools with Tasers, the department's lack of guidance on what type of force may be used on children and teenagers and lack of guidance on when tasing juveniles was appropriate could amount to 'deliberate indifference.'" Id. at 495. Accordingly, the Court denied summary judgment as to the Monell claim.

The factual scenario presented here—a student tased by a school resource officer—is precisely the scenario the court faced in Geist, and we similarly conclude that given the Township's decision to equip SROs with tasers, a "lack of guidance on what type of force may be used on children and teenagers and lack of guidance on when tasing juveniles was appropriate could amount to 'deliberate indifference.'" Geist, 40 F.Supp.3d at 495. While the defendant contends that this case differs from Geist, in that the court in that case had more of a historical context to consider which the Township claims is lacking in the instant case, we note that Geist was decided at the summary judgment stage. In the instant case, the parties have not had the benefit of full discovery through which these factual underpinnings could be unveiled. Should such factual underpinnings come to light through discovery, those considerations would be properly considered on a motion for summary judgment. However, at this stage, where we are confined to the allegations in the amended complaint itself and must accept those allegations as true, we find that the plaintiff has adequately pleaded a Monell claim against the Township.

We find this authority presented by the plaintiff persuasive and conclude that the plaintiff's Monell claim should proceed against the Township. In the instant case, the plaintiff has alleged that the Township's Use of Force Policy does not provide guidance to officers on the use of force, and specifically the use of tasers, against minors in the school setting. The amended complaint asserts that the Township equips SROs with tasers, and as such, the lack of guidance on the use of tasers on minors in the school setting amounts to deliberate indifference. The complaint further asserts that the harm imposed upon J.B. was a direct result of the lack of guidance on the use of tasers on minors in the school setting. At this stage, with our discretion cabined and confined to the pleadings, we find that these allegations are sufficient to proceed with a Monell claim against the Township. The question of whether Brown can prove what is alleged must await another day, and another motion in the nature of a summary judgment motion.

## III.   Conclusion

Accordingly, for the foregoing reasons, the defendant's motion to dismiss (Doc. 10) will be DENIED.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: August 25, 2023